# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                Case No. 20-CR-168

**PATRICK R. BUDIC**
   **Defendant.**

## DECISION AND ORDER

Defendant Patrick Budic moves to dismiss the indictment against him. For the reasons that follow, his motion will be denied.

**I.**

The government charged defendant with wire fraud and related offenses arising out of his alleged abuse of a federal program for the disposal of surplus property. (R. 1.) The program permits federal agencies to donate excess property "to an educational institution or nonprofit organization for the conduct of technical and scientific education and research activities." 15 U.S.C. § 3710(i). The indictment alleges that defendant, the operator of a non-profit research organization called Northridge National Laboratory ("NNL"), sold property he acquired for personal benefit and profit rather than using the property in research and development projects. (R. 1 at 3.)

Defendant filed a motion to dismiss the indictment, asking the court to determine whether the undisputed facts demonstrate a violation of law. (R. 15.) The magistrate judge handling pre-trial proceedings issued a recommendation that the motion be denied, citing the general rule that at the pretrial stage the indictment ordinarily should be tested solely by its

sufficiency to charge an offense, regardless of the strength or weakness of the government's case. See United States v. Sampson, 371 U.S. 75, 78-79 (1962); see also United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009) ("[W]hen evaluating the sufficiency of an indictment, we focus on its allegations, which we accept as true. Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.") (internal citations and quote marks omitted). Defendant objects (R. 28), requiring me to review the matter de novo. Fed. R. Crim. P. 59(b).[1]

**II.**

Defendant does not challenge the sufficiency of the indictment. See Moore, 563 F.3d at 585 ("An indictment need not say much to be deemed sufficient—it must: (1) state all the elements of the crime charged; (2) adequately apprise the defendants of the nature of the charges so that they may prepare a defense; and (3) allow the defendant to plead the judgment as a bar to any future prosecutions."). Rather, he contends that the undisputed facts show he did not commit fraud. (R. 15 at 1, 13-15.)

Defendant's argument starts with the premise that § 3701(i) does not explicitly prohibit resale, although he acknowledges that acquiring equipment for the sole purpose of reselling it does seem to undermine the spirit of the program, which was designed to spur technological development directly through gifts of equipment, not indirectly by helping non-profits raise

---

[1]The magistrate judge granted defendant's motion for a bill of particulars, requiring the government to identify "the specific statements in writing that contain the allegedly false and fraudulent statements that form the basis for" the fraud counts. (R. 21 at 13.) The government did not seek review of this order and has provided the bill. (R. 27.) As will be discussed, defendant argues that he made no false claims in his communications seeking excess federal medical equipment. (R. 28 at 9; R. 15 at 14.) The bill of particulars will assist him in identifying the statements he must defend at trial.

2

funds. (R. 15 at 15-16.) Thus, the government property specialists who received his requests could have asked questions and refused to donate the equipment if unsatisfied with his answers. But § 3701(i) is not a criminal statute which imposes penalties based on what was done with the property <u>after</u> receipt. Instead, in order to sustain the charges here, the government must prove that he made false and fraudulent statements in <u>acquiring</u> government property. Defendant contends that the evidence shows he did not. (R. 15 at 16.)

Like the magistrate judge, I find that defendant's challenge is not properly heard on a motion to dismiss the indictment. Defendant contends that, contrary to the allegations in the indictment, his communications—provided by the government in discovery—contained no statements that were on their face materially false or fraudulent. (R. 15 at 17-20; R. 28 at 8-9.) The problem with this argument is that a defendant seeking pre-trial dismissal ordinarily may not "transcend the four-corners of the indictment." <u>United States v. DiFonzo</u>, 603 F.2d 1260, 1263 (7th Cir. 1979); <u>see also</u> <u>United States v. White</u>, 610 F.3d 956, 958 (7th Cir. 2010) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case."); <u>United States v. Yasak</u>, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a summary trial of the evidence. Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged.") (internal citation and quote marks omitted).

Defendant relies on the exception recognized in <u>United States v. Risk</u>, 843 F.2d 1059 (7th Cir. 1988). (R. 28 at 2.) There, the government provided Risk with the documentation presented to the grand jury that returned his indictment. Risk then submitted that documentation in support of a motion to dismiss, and in its response the government admitted that these documents accurately summarized the facts which gave rise to the indictment. <u>Id.</u> at

3

1060. "The government did not object to Risk's submission of these facts, nor did it challenge the authority of the district court to consider the government's facts, as presented by Risk, upon deciding Risk's motion to dismiss." Id.

After the district court dismissed the indictment, the government appealed, citing the general rule set forth above. Id. at 1061 (citing Sampson, 371 U.S. at 78-79). In affirming the dismissal, the court of appeals explained:

> The government, however, mistakenly reads the district court's opinion as dismissing the indictment because the government could not prove its case. Rather, the district court found the allegations in the indictment insufficient to state a claim under the [charging] statute. . . . Although [the allegations in the indictment corresponded to the statutory elements], the district court found that the government's characterization of the undisputed facts did not constitute a violation of any statute. In other words, the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment. The district court found no violation and correctly dismissed the indictment, not because the government could not prove its case, but because there was no case to prove.
>
> The government did not challenge the district court's authority to consider the undisputed facts disclosed by the government until after the district court granted Risk's motion to dismiss. Even then, the government did not object but proffered additional facts which it urged the court to consider upon reconsideration of Risk's motion. It was not until this appeal that the government first objected to the district court's consideration of the undisputed facts voluntarily disclosed by the government to Risk during discovery. Now it is too late. Under the unusual circumstances of this case, we find that the district court acted properly.

Id. at 1061.[2]

In the present case, the government has not acquiesced to the court deciding the motion based on an undisputed set of facts. (R. 17 at 1; R. 30 at 1-2.) District courts in this circuit have regularly distinguished Risk under such circumstances. E.g., United States v. Hamzeh,

---

[2]In his objections, defendant contends that the magistrate judge misread Risk. (R. 28 at 6.) I have quoted the operative portion of the court's opinion in full.

4

No. 16-cr-21-pp, 2018 U.S. Dist. LEXIS 67514, at *15 (E.D. Wis. April 23, 2018) ("The defendant ignores the fact that, unlike this case, Risk truly did involve a set of undisputed facts."); United States v. Brown, No. 14-CR-82, 2014 U.S. Dist. LEXIS 180715, at *15 (E.D. Wis. Nov. 26, 2014) ("In Risk, the Seventh Circuit made clear that the exception applies only where the underlying facts are undisputed and the government does not object to the court examining facts outside the indictment."), adopted, 2015 U.S. Dist. LEXIS 6667 (E.D. Wis. Jan. 21, 2015); United States v. Romo, No. 06-CR-335, 2007 U.S. Dist. LEXIS 76715, at *6 n.3 (E.D. Wis. Oct. 16, 2007) ("This is not a situation, like that presented in Risk, where the government has acquiesced in the court's consideration of whether the undisputed facts state a violation of law."); United States v. Doyle, No. 04 CR 572, 2006 U.S. Dist. LEXIS 21616, at *16-17 (N.D. Ill. Apr. 11, 2006) ("Here, the government has objected to a pretrial determination of the sufficiency of the evidence, taking this case outside the narrow exception, created by the Seventh Circuit in Risk, to the general rule that the district court should not consider the sufficiency of the government's evidence in ruling on a motion to dismiss an indictment.").

Defendant cites cases from the Sixth Circuit considering pre-trial motions to dismiss where there was no issue of material fact. (R. 28 at 4, citing United States v. Levin, 973 F.2d 463 (6th Cir. 1992); United States v. Jarrett, No. 3:12-CR-144, 2013 U.S. Dist. LEXIS 41859 (E.D. Tenn. Jan. 18, 2013); see also R. 20 at 3.) However, other circuits have rejected this procedure, see United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("Although the Sixth Circuit has found that Federal Rule of Criminal Procedure 12 provides a basis for granting a pre-trial motion to dismiss a criminal indictment, see Levin, 973 F.2d at 469, we, along with three other circuits, reject this view."), and in his objections defendant cites no Seventh Circuit authority aside from Risk. See also United States v. McGee, No. 08-CR-17, 2008 U.S. Dist.

5

Case 2:20-cr-00168-LA   Filed 12/14/21   Page 5 of 10   Document 32

LEXIS 16008, at *12 (E.D. Wis. Mar. 3, 2008) (distinguishing Levin because in that case "there was an affirmative statement by a government agency that the precise conduct that the government sought to prosecute was legal").

Defendant contends that addressing his motion now, rather than waiting until the government rests its case at trial, will save judicial resources. (R. 28 at 6-7.) He challenges the government to identify a singe material factual dispute in its response to the facts set forth in his objection, and to support that claim by citing to a potentially admissible portion of the government's discovery; if the government cannot do so, the court should consider his motion and rule as a matter of law. (R. 28 at 7, 10.) This sounds like the summary judgment procedure authorized in civil cases. See, e.g., Johnson v. Advocate Health & Hosps. Corp., 892 F.3d 887, 893-94 (7th Cir. 2018) (holding that to defeat a motion for summary judgment, the party opposing it must identify specific, admissible evidence showing that there is a genuine dispute of material fact for trial). However, "there is no summary judgment analog in criminal cases." United States v. Lupton, No. 07-CR-219, 2007 U.S. Dist. LEXIS 90549, at *11 (E.D. Wis. Dec. 10, 2007).

Defendant argues that the rule against summary judgment in criminal cases exists to protect the accused, who has a constitutional right to trial, even when the government possesses overwhelming evidence. (R. 28 at 5-6.) He further argues that the narrow construction of Risk adopted in the cases cited above gives the government unilateral power to prevent a district court from even considering a pre-trial motion to dismiss. (R. 28 at 5.) But such government vetoes exist in other contexts as well, see Fed. R. Crim. P. 23(a)(2) (requiring the government's consent to a bench trial), and as with Rule 23(a) "the result [of its exercise in this context] is simply that the defendant is subject to an impartial trial by jury—the very thing

6

that the Constitution guarantees him." Singer v. United States, 380 U.S. 24, 36 (1965). As the Court further noted in Singer, "although [a defendant] can waive his right to be confronted by the witnesses against him, it has never been seriously suggested that he can thereby compel the Government to try the case by stipulation." Id. at 35. That is essentially what defendant seeks here. And the court cannot short-circuit the procedures required by the Rules in order to save time and resources. See id. at 38 (declining to override the government's veto when the only reason for a court trial provided by the defense was to save time).

**III.**

Even if I were to apply the Sixth Circuit approach defendant suggests, the motion would have to be denied. In Jarrett, the court distilled from Levin and its predecessors "two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed." 2013 U.S. Dist. LEXIS 41859, at *9. In addressing the various issues raised by the motion, the court concluded that whether the defendant had the requisite intent to violate the statute was a question of fact for the jury, not a question of law properly before the court on a motion to dismiss. Id. at *12-13.

In the present case, the government contends that whether defendant's statements were false and intended to defraud cannot be determined simply by reading the statements in isolation; rather, they must be considered in the context of his years-long scheme. (R. 30 at 3-4.) As the Seventh Circuit has noted in the perjury context, "When the question and answer may have more than one meaning standing alone, their intended meaning is ordinarily an issue for the jury to determine from their context and other indicia of the witness' intent in giving the answer." United States v. Williams, 536 F.2d 1202, 1205 (7th Cir. 1976).

7

In the pertinent communications here, defendant stated that "NNL intends to use this equipment for the purpose of supporting technology research and development projects." (R. 15 at 11, 20.) While the word "supporting" could be understood to encompass defendant's plan to sell the equipment to pay overhead (e.g., storage space fees and cell phone bills), as he argues (R. 15 at 20), it could also be understood to mean the property would be used to conduct research.[3] Defendant also stated that once received the equipment "will subsequently be located at a NNL facility in Milwaukee and/or other locations as appropriate for the technology projects being supported." (R. 15 at 11, 21.) Defendant notes that this statement "does not create a specific promise about where the equipment will be or what will be done with it." (R. 15 at 21.) But it is also possible to read the statement as a representation that the property will be used to support research projects. And what to make of the allegation that defendant provided his username and password to a medical supply company so the company could identify excess property that it could sell for a profit if NNL acquired the property under the program? (R. 1 at 3-4; R. 15 at 7.) Or of defendant's reference in another communication to NNL's "operations office" (R. 15 at 22), when it appears he actually ran the operation out of his apartment (R. 15 at 5; R. 28-1 at 9)?

In the bill of particulars, the government contends that the first two statements quoted in the preceding paragraph were false and fraudulent (R. 27 at 4), as were various other statements defendant made regarding the size of NNL's laboratory, the number of its

---

[3] In its original response to the motion, the government asserted that defendant never conducted research activities with the equipment he acquired or with his profits. (R. 17 at 2.) The government also appeared to dispute defendant's claims as to what he did with the money deposited in his bank account. (R. 17 at 7-8.) The government further noted that others involved in the case did not view defendant's "statement in the same self-serving fashion that he does." (R. 17 at 9 n.1.)

operational facilities, the breadth and scope of its personnel, and the nature of its projects (R. 27 at 5). The government also alleges as false a February 3, 2014, communication defendant sent to the U.S. Department of Veteran's Affairs, requesting the transfer of ScriptPro units, in which defendant stated: "This equipment will be used in conjunction with the Mass Medical Evacuation and Disaster Response activities at NNL as well as regional SAR and EMS support." (R. 27 at 5-6.) Defendant makes no claim that NNL ever engaged in evacuation and disaster response activities. Based on the evidence he presented with his objections, it appears NNL did little more than acquire government property (which it resold or stored) and submit grant proposals (none of which were funded). (R. 28-1 at 6-7, 9-10.)

In sum, while the words defendant used may be undisputed, the inferences to be drawn from those statements are not. Cf. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993) ("On summary judgment, a court can neither make a credibility determination nor choose between competing inferences."). To be clear: I am making no findings regarding defendant's statements, one way or the other. Nothing in this decision should be read as pre-judging any Fed. R. Crim. P. 29 motion defendant may make at trial. However, I decline to dismiss the indictment on defendant's pre-trial motion.

**IV.**

In the introductory section of his recommendation, the magistrate judge indicated: "The United States alleges that Patrick R. Budic engaged in a years long scheme to defraud the government. Budic claims that he simply found a loophole in a federal program." (R. 21 at 1.) In Moore, the Seventh Circuit confronted a similar situation. The defendants in that case, charged with theft from an Indian casino after they rigged a contest, claimed that they simply "exploited a loophole in the rules." 563 F.3d at 586. The court of appeals affirmed the denial

9

of a motion to dismiss the indictment, stating whether the defendants "broke the rules or just took advantage of a technicality is a question of fact that could not be decided without a trial." Id. The same is true here.

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 21) is adopted, and defendant's motion to dismiss (R. 15) is denied.

Dated at Milwaukee, Wisconsin, this 14th day of December, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge